# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs March 2, 2010

## MICHAEL DAVIS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-04293    Paula Skahan, Judge**

---

**No. W2009-02111-CCA-R3-PC  - Filed June 23, 2010**

---

The petitioner, Michael Davis, appeals the denial of his petition for post-conviction relief from his especially aggravated robbery conviction, arguing that the post-conviction court erred in finding that he received effective assistance of counsel. Because we conclude that trial counsel was deficient for failing to request a jury instruction on facilitation as a lesser-included offense of especially aggravated robbery, and that there is a reasonable probability that the outcome of the petitioner's trial would have been different had counsel done so, we reverse the judgment of the post-conviction court and remand for the granting of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined. JOSEPH M. TIPTON, P.J., concurred in results only.

Vanessa Cross, Memphis, Tennessee, for the appellant, Michael Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Bryan Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was indicted by a Shelby County Grand Jury for one count of especially aggravated kidnapping and one count of especially aggravated robbery based on the January 17, 2003 kidnapping and robbery of a Memphis laundromat attendant. Following a jury trial,

he was acquitted of the especially aggravated kidnapping count of the indictment but convicted of the especially aggravated robbery count, for which he was sentenced to twenty-five years as a Range II offender in the Department of Correction. We affirmed his conviction on direct appeal, and our supreme court denied his application for permission to appeal. See State v. Michael Davis, No. W2006-01151-CCA-R3-CD, 2007 WL 2247254, at *1-2 (Tenn. Crim. App. Aug. 3, 2007), perm to appeal denied (Tenn. Jan. 28, 2008).

Our direct appeal opinion provides the following summary of the evidence presented at the petitioner's trial:

At approximately 7:00 a.m. on January 17, 2003, the victim, Tony Saulsberry, arrived at his family's business, Ron's Coin-op Laundry, located at Lamar and Sims in Memphis, where he worked as an attendant. Upon arrival, he parked his 1995 Crown Victoria near the door of the business and proceeded inside. While the victim was inside the office area, he noticed four or five men enter the building, each armed with a handgun and wearing a mask. As the men approached, the victim was ordered to get down on the floor. While on the floor, one of the men struck the victim in the head with a gun, causing a wound which later required six to ten stitches to close. The assailants then used duct tape to bind the victim's arms behind his back and to blindfold him, and they removed his watch, ring, and necklace. The assailants proceeded to ask the victim about any surveillance cameras and cash in the store. The victim explained that there were no cameras in the store and that he had no money as he was just opening the laundromat. At this point, he was picked up off the floor by his assailants and escorted outside, where he was placed in the backseat of a pickup truck. At least two of the men entered the cab of the truck with the blindfolded victim.

Once inside the truck, one of the men placed a pistol on the victim's upper leg and shot him. The assailant then reached into the victim's pockets and took his car keys, wallet, and approximately $600 in cash. After the shooting, one of the assailants told the victim that he should now know that they "ain't playing." The victim was also informed that they were going to kill him if he did not give them what they wanted. The truck made two stops while the victim was held captive, and, at each stop, the victim heard the two assailants in the truck speaking with others. On one occasion, he heard one of the men tell someone, "here are the car keys right here." The second time the truck stopped, the victim was shoved out of the truck. Once outside, the victim was able to remove the tape from his eyes and arms. Although in pain, the victim "limped [and] crawled" to a nearby elementary school, where police

were called. The victim was unable to identify his assailants because, even prior to his being blindfolded, the assailants wore masks and used devices to disguise their voices.

Prior to 8:30 a.m. on the day of the robbery, the victim's brother, Ronald Saulsberry, stopped by the laundromat for a short visit. However, when he arrived, the only person present in the laundromat was a customer doing her laundry. Although the victim was not present, Saulsberry noticed that his car was still parked in the lot. He observed specks of blood on the floor of the laundromat and called his father, who called the police. After getting off the phone, Saulsberry looked out the laundromat window and observed the [petitioner] getting out of a Ford Taurus. Saulsberry was acquainted with the [petitioner] because they were from the same neighborhood and because Saulsberry had, in years prior, dated the [petitioner's] sister. Saulsberry was unable to identify the driver of the Ford Taurus. Saulsberry observed that the [petitioner] had the victim's car keys in his hand, and he watched as the [petitioner] unlocked the victim's car, got inside, backed up, and drove off.

Lt. William Woodard of the Memphis Police Department was assigned to the investigation of the laundromat crimes. The [petitioner] was developed as a suspect after Ronald Saulsberry informed police that the [petitioner] had taken the victim's car. Saulsberry later identified the [petitioner] in a photo lineup as the person who had taken the car. Around the same time, Woodard was informed by the police auto theft bureau that a truck, stolen from Southhaven, Mississippi, had been recovered in south Memphis. Inside the cab, police found blood in the back seat, a ski mask, a bloody towel, and a Mississippi drive-out tag. Additionally, affixed to the rear of the truck was a Tennessee dealer's license plate, which the owner of the truck stated was not with the truck when it was stolen. Woodard checked the dealer's tag number and discovered that, although it was now expired, the [petitioner] had been issued a ticket in a vehicle while driving a white Mercury with the same dealer's tag number in November of the previous year. Additionally, following DNA testing, it was determined that the blood on the towel found in the truck matched that of the victim's.

Id. (footnote omitted).

The petitioner filed a *pro se* petition for post-conviction relief on July 15, 2008, and, following the appointment of counsel, an amended petition on October 15, 2008 in which he

claimed that he was denied the effective assistance of counsel. Although the petitioner raised a number of allegations of ineffective assistance in his petition and at the evidentiary hearing, his argument on appeal is that trial counsel was ineffective for failing to request an instruction on facilitation as a lesser-included offense to especially aggravated robbery and for failing to investigate a potential conflict of interest created by counsel's representation of Eduardo White. The petitioner asserted that he informed counsel that White was a possible participant in the crimes for which the petitioner was on trial, but counsel failed to investigate the matter.

We confine our summary of the evidentiary hearing proceedings to the testimony that is relevant to the issues raised on appeal. Trial counsel testified that he had been practicing law since 1974, had been licensed in Tennessee since 1984, and had been practicing criminal law since 1985, with approximately seventy-five percent of his current practice devoted to criminal defense work. He said that the petitioner's family retained him to represent the petitioner, whom he had represented on several previous matters, at the trial level and that he was then appointed to represent the petitioner for the direct appeal. Trial counsel stated that he spoke with the petitioner "on numerous occasions," with their discussions including the charges against the petitioner and the proof the State would introduce at trial. He said that the petitioner maintained his innocence throughout, insisting that he had not been present and had not participated in the crimes.

Trial counsel could not recall whether he requested any lesser-included offense instructions in the case and explained that his usual practice was to review the trial court's proposed instructions before determining whether any changes or special jury instructions were warranted.

Trial counsel acknowledged that he might have been representing Eduardo White on a possession with intent case during the same time that he was representing the petitioner in the case at bar. He said, however, that he had no recollection of the petitioner's having ever mentioned White or anyone else as someone he should investigate in connection with the petitioner's case. He testified:

Ma'am, my recollection is [the petitioner] said he wasn't there, didn't do it, didn't know who did. But I don't have any recollection of any discussion of Eduardo White, regardless, ma'am. You know this - - this was a -- there were a lot of things going on in that community that was, if I recall correctly, was being investigated as gang activities. And there were a lot of names back and forth. I don't have any present recollection of any discussion with [the petitioner] specifically regarding Eduardo White. . . . I'm not saying that we did not talk about Eduardo in some . . . form or another, but I don't

-4-

have any recollection of it.

Trial counsel testified that his trial defense strategy consisted of trying to discredit the State's witnesses and to show that the petitioner was not present and had no part in the crimes. He further testified, however, that he argued in closing that if the petitioner was guilty of anything, it was only theft or possession of stolen property:

> And I remember in our closing argument in that case, the argument was, you know, if he's guilty of anything, it is theft of property or possession of stolen property and what have you, but there's no direct evidence of him being involved in a kidnapping or a robbery. So we were trying to sell the theft conviction in exchange for reprieve on the . . . especially aggravated robbery and the especially aggravated kidnapping, which is what we thought the proof really supported.

The petitioner testified that he told counsel that he had nothing to do with the crimes and that Eduardo White "would be a person of more interest in this case than [he] would," but counsel was not enthusiastic about pursuing the matter and, to his knowledge, never followed through on the information. He said he did not know whether White was a client of counsel's at the time, but he and several individuals with whom he was familiar, including White, "all associated with [trial counsel] at one particular time or another."

On September 21, 2009, the post-conviction court entered a detailed written order denying the petition. Among other things, the court found that there was insufficient evidence to support the petitioner's claim that counsel's conduct regarding the jury instructions did not fall "within the 'wide range of reasonable professional assistance,'" or that the inclusion of the lesser-included offense instructions would have changed the outcome of the trial. The court further found that the petitioner failed to establish that counsel's representation of Eduardo White on an unrelated matter created any conflict of interest in his representation of the petitioner.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to

the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

## A. Lesser-Included Offense Instruction

Pointing out that the State relied on a theory of criminal responsibility to prove its case, the petitioner argues on appeal that trial counsel was deficient for not requesting that the jury be instructed on facilitation as a lesser-included offense of especially aggravated

robbery and not raising the issue in a motion for new trial or on appeal.[1] He further argues that had such an instruction been given, there is a reasonable probability that the jury would have convicted him of that lesser offense. The State argues that it was not unreasonable for trial counsel to forego an instruction on facilitation in the context of his defense strategy of attempting to show that the petitioner was not involved in the crimes. The State further argues that the petitioner cannot establish prejudice, as "[n]o reasonable jury hearing the evidence . . . could have believed that the petitioner was not a principle actor in the criminal endeavor and that he only facilitated the others in robbing the victim."

The issue of lesser-included offenses is controlled by the prevailing law at the time of the trial. Wiley v. State, 183 S.W.3d 317, 328 (Tenn. 2006). In trials that occurred before January 1, 2002, it was the trial court's duty to charge juries as to the law of each offense included in an indictment whether or not a defendant requested such an instruction. See Tenn. Code Ann. § 40-18-110(c) (1997); State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006). In 2001, however, Tennessee Code Annotated section 40-18-110 was amended to provide that appellate review of jury instructions on lesser-included offenses is precluded if the issue is not presented in writing to the trial court for determination prior to the trial court's charge to the jury. Tenn. Code Ann. § 40-18-110(c) (2006). The amendments govern all trials conducted on or after January 1, 2002, and were therefore in effect at the time of the petitioner's 2006 trial. Id. § 40-18-110, Compiler's Notes.

When a court determines whether an instruction on a lesser-included offense is warranted, it must first consider whether any evidence exists that reasonable minds could accept in support of the lesser-included offense. See State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999). The court must then consider whether the evidence, viewed in the light most favorable to the existence of the lesser-included offense, is legally sufficient to support a conviction for the lesser-included offense. Id. In so doing, the court must consider the evidence liberally, in a light most favorable to the existence of the lesser-included offense, without making any judgments on the credibility of the evidence. State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469. Moreover, "[r]easonable minds may accept the same evidence as supporting the existence of both the greater offense and the lesser offense." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002).

A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the

---

[1] The petitioner did not include trial counsel's failure to raise on direct appeal the lack of a jury instruction on facilitation as an issue of ineffective assistance before the post-conviction court. Consequently, the post-conviction court had no opportunity to address this claim.

offense." Tenn. Code Ann. § 39-11-402(2). A person facilitates a felony if, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Under this statute, a defendant who has been "charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party." Tenn. Code Ann. § 39-11-403, Sentencing Comm'n Comments.

Trial counsel had no specific memory of whether he requested any lesser-included offense instructions at trial. He indicated, however, that he presumed that the trial court would have automatically included any applicable lesser-included offenses, and he said that he did not recall having any concerns about the instructions proposed by the court:

> But I would think that lesser includeds would have automatically been included, and the only way that I would have made a special request is that after reviewing the proposed jury instructions, if we felt like there was something that was missing or something that wasn't supposed to be there, we have an opportunity, usually, to review those, before -- the Court will give them to us in advance and give us an opportunity to see if there's something that we want to add or something that we have a problem with or need to discuss, and I don't remember any issue in that regard coming up in this case.

We conclude that trial counsel was deficient for failing to request an instruction on facilitation under the facts in this case. At the time of the petitioner's trial, our courts had held "that facilitation of a felony is a lesser-included offense when a defendant is charged with criminal responsibility for the conduct of another." State v. Fowler, 23 S.W.3d 285, 288 (Tenn. 2000); see also State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995) ("[V]irtually every time one is charged with a felony by way of *criminal responsibility* for the conduct of another, *facilitation* of the felony would be a lesser included offense."), overruled on other grounds by State v. Williams, 977 S.W.2d 101, 106 n.7 (Tenn. 1998). Although trial counsel stated that his defense strategy consisted of attempting to prove that the petitioner was not there and had nothing to do with the crime, he also said that he argued in closing that the petitioner was at most guilty of possession of stolen property or theft. Thus, the jury was not presented with the same type of "all or nothing" defense as in Ely, 48 S.W.3d at 724, in which our supreme court concluded that the trial court did not err when it failed to instruct the jury on facilitation of felony murder because "Ely's defense was that he was not present; therefore, he was either guilty of some degree of homicide or wholly innocent of any wrongdoing."

We further conclude that trial counsel's failure to request the facilitation instruction prejudiced the petitioner's case. When a lesser-included offense instruction is improperly omitted from trial, constitutional harmless error analysis applies, which requires the State to show that the error did not affect the outcome of the trial beyond a reasonable doubt. Ely, 48 S.W.3d at 725. The State's proof connecting the petitioner to the crime consisted of the petitioner's possession of the victim's car keys, his taking of the victim's vehicle, and the fact that he had been using, approximately two months earlier, the same dealer's drive-out tag that was affixed to the truck used in the robbery. In our direct appeal opinion, we summarized the evidence linking the petitioner to the crime when addressing the issue of whether the trial court properly instructed the jury on the petitioner's criminal responsibility for the conduct of another:

> It is abundantly clear that, during the course of the especially aggravated robbery, the [petitioner] had associated himself with those in the criminal venture because he was in possession of the recently stolen keys to the victim's car and because he "benefit[ed] in the proceeds or results of the offense." His association is further evidenced by the fact that the Tennessee dealer's license plate affixed to the truck used in the commission of this crime was previously affixed to an automobile driven by the [petitioner] two months earlier. Contrary to the [petitioner's] argument, proof that the [petitioner] "planned or assisted in planning the robbery" is not required to establish criminal responsibility when based upon the conduct of another. Again, proof is required only to establish that the [petitioner] acted with intent to promote or assist the commission of the offenses or to benefit in the proceeds. The [petitioner's] argument that the evidence fails to establish that he "personally participated in any facet" of the especially aggravated robbery is belied by the evidence in the record.

Michael Davis, 2007 WL 2247254, at *3.

In our view, a reasonable jury, if given the option, could have accepted the above evidence in support of the lesser-included offense of facilitation, finding that the petitioner did not intend to benefit in the proceeds of the robbery but instead, knowing that others intended to commit the crime, knowingly furnished substantial assistance in their endeavor. Moreover, the evidence, while sufficient to sustain the conviction for especially aggravated robbery, would have also been legally sufficient to sustain a conviction for facilitation of especially aggravated robbery. We, therefore, reverse the judgment of the post-conviction court and remand for the granting of post-conviction relief. However, because of the possibility of further review, we will address the petitioner's second allegation of ineffective assistance.

## B. Conflict of Interest

The petitioner argues that trial counsel was deficient for not investigating whether his representation of Eduardo White on a different matter created a conflict of interest in his representation of the petitioner. He asserts that after he informed trial counsel of White's possible involvement, trial counsel had an affirmative duty to investigate whether an actual conflict of interest existed and that counsel's failure to do so should result in a presumption of prejudice to the petitioner's case.

In denying relief on the basis of this claim, the post-conviction court found, *inter alia*, that there was no evidence that counsel's representation of Eduardo White "at or around the time" of the petitioner's trial affected his representation of the petitioner and no evidence that White was connected to the incident that formed the basis for the petitioner's charges. The court, therefore, concluded that the petitioner failed to establish that trial counsel had a conflict of interest that prejudiced the outcome of his trial.

The record fully supports the findings and conclusions of the post-conviction court on this claim. Prejudice is presumed in cases in which a petitioner can establish that his trial counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [counsel's] performance.'" Strickland, 466 U.S. at 692, 104 S. Ct. at 2067 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350, 100 S. Ct. 1708 (1980)). Our supreme court has explained that "an actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" State v. White, 114 S.W.3d 469, 476 (Tenn. 2003) (citing State v. Culbreath, 30 S.W.3d 309, 312-13 (Tenn. 2000) (quoting Tenn. Sup. Ct. R. 8, EC 5-1)). "The proper focus is solely upon whether counsel's conflict affected counsel's actions." Netters v. State, 957 S.W.2d 844, 848 (Tenn. Crim. App. 1997).

At the evidentiary hearing, the petitioner testified that he told counsel that White "would be a person of more interest in this case than" he was and that White was someone "that could possibly help the prosecution with their case." By contrast, trial counsel's testimony, which was obviously accredited by the post-conviction court, was that the petitioner never mentioned White's name to him as a possible participant and never raised with him the issue of any potential conflict of interest. Moreover, as the post-conviction court noted, there was no evidence presented to show that White was connected to the robbery for which the petitioner was convicted. We conclude, therefore, that the petitioner has failed to show that trial counsel was deficient for failing to investigate a possible conflict of interest of which he was unaware, or that counsel's possible representation of White on an unrelated matter at the same time as the petitioner's trial created any actual conflict of interest from which prejudice to the petitioner's case should be presumed.

## CONCLUSION

Based on our review, we conclude that trial counsel provided ineffective assistance by not requesting a lesser-included offense instruction on facilitation. Accordingly, we reverse the judgment of the post-conviction court and remand for the granting of post-conviction relief.

_____
ALAN E. GLENN, JUDGE